UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MATRICIA MOORE,                                :

                Plaintiff,                    :        00 Civ. 7384 (PAC)

   -   against -                          :        <u>OPINION</u>
                                                   <u>AND ORDER</u>

CONSOLIDATED EDISON COMPANY OF            :
NEW YORK, INC., and JOHN MORRILL,

                                     :

                Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

        Plaintiff Matricia Moore ("Moore") brings this action for employment

discrimination, libel, and defamation against Defendants Consolidated Edison Company

("Con Ed"), her former employer, and John Morrill ("Morrill"), her former supervisor.

Moore brings her discrimination claims against both Defendants under 42 U.S.C. § 1981,

New York State Executive Law § 296 and New York City Administrative Code § 8-502,

and additional claims against Con Ed under Title VII of the 1964 and 1991 Civil Rights

Acts, 42 U.S.C. § 2000e, <u>et</u> <u>sec.</u> ("Title VII").  Moore alleges that she was subjected to

differential treatment on the basis of race and sex, a hostile workplace environment, and

retaliation for complaining about these conditions.  Moore also alleges violations of the

sick leave provisions of the Family and Medical Leave Act, 29 U.S.C. § 2601 <u>et</u> <u>sec.</u>

("FMLA"), including retaliation for taking such leave. Defendants now move for

summary judgment on all claims.[1]  The motion is granted in part and denied in part.

---

[1] At oral argument, Moore's counsel acknowledged that Plaintiff has abandoned her libel, defamation, and
FMLA claims.  Accordingly, these claims are dismissed.

## BACKGROUND

### I. Factual History[2]

Moore, an African-American woman, was employed by Con Ed between 1989 and 2004. Moore's claims arise from events occurring during her tenure as a Real Estate Representative in the Con Ed Real Estate department, from on or about October 1996 to January 30, 2004.[3]

### *Sexual and Racial Harassment by Co-Worker*

Moore alleges that Louis Carnevale ("Carnevale"), a Senior Real Estate Representative, made racially and sexually offensive statements and engaged in other harassing conduct from on or about November 1997 up to on or about November 2000. These statements and conduct allegedly included regularly asking Moore if she wanted sex, referring to his penis size and sexual prowess, staring at her body while she worked, making unwelcome efforts to touch Moore, and generally making sexually suggestive comments to her. He also regularly squeezed between Moore and Jeanette Grant ("Grant"), an African-American female clerk in the department, and said, "Let's do an oreo cookie," or some variation of that remark. Fields Dec. Exhibit K, 134-35. Moore recalled one particular incident in which Carnevale stroked Moore's arms and, after she pushed him away, said to her and Grant that "back in the days the two of you would be having my babies." Id. at 130-31. Carnevale allegedly harassed Moore in this fashion

---

[2] These facts are derived from the Amended Complaint, and the parties' Local Rule 56.1 Statements and the supporting evidence. Sources will be cited only when quoted. The facts are undisputed unless otherwise indicated.

[3] Plaintiff's job responsibilities are not clearly explained by the submissions of either party, perhaps due to alterations over time. Her responsibilities apparently included tracking tenants' insurance certificates and taxes, and assisting in negotiating leases and inspecting tenancies.

"continually" and attempted to touch her "weekly," amounting to "countless" incidents during the entire three year period.  Id. at 132-35, 746-48.[4]

Moore complained about Carnevale's conduct to her supervisor Domenick Lorenzon ("Lorenzon"), and two Directors of the Real Estate department:  Robert Mele ("Mele"), Director until December 1, 1997, and his successor Robert Flock ("Flock").  It is not clear precisely how detailed those complaints were in describing Carnevale's conduct, though Moore admitted that she never mentioned that Carnevale touched her.[5] In any event, both Flock and Lorenzon allegedly witnessed "oreo cookie" incidents personally, Lorenzon apparently more than once.  Moore did not contact Con Ed's Equal Employment Opportunity Affairs office ("EEOA") or any EEOA official regarding Carnevale, and no disciplinary or remedial action was taken by Con Ed at any time.


### *Exclusionary Treatment by Morrill*

Moore alleges that between 2000 and 2004 Morrill excluded her from work related meetings and denied her necessary feedback and guidance on her assigned tasks.  She further alleges that the white males in the department were included in meetings and other related professional development opportunities that were denied to her.  Defendants dispute Moore's general allegations, and also present evidence that any

---

[4] Defendants' argue that Moore conceded that the harassment occurred less often, and the oreo cookie comment only once, but the deposition transcript on which Defendants rely does not support their position. The transcript clearly shows that Moore conceded only that the "oreo cookie" remarks occurred less often than weekly and still asserted they occurred countless times in total.  More importantly, she maintained at all times that Carnevale's harassment more generally occurred constantly during the relevant period.
[5] In asserting that Moore has admitted that she complained of nothing more than generic "vulgarity," Defendants' mischaracterize the deposition record.  Aside from using the terms "vulgarity" and "vulgar" as shorthand to refer to Carnevale's statements during her depositions, Moore mentioned that in making one complaint she "probably" used the term "vulgar" to refer to Carnevale's remarks, *as well as* "other terms." Fields Dec. Exhibit K, 140.  This is the only instance in her deposition testimony in which Moore discussed how she characterized Carnevale's conduct in her complaints to her supervisors.  Moreover, in her affidavit in support of her opposition to Defendants' motion, Moore states that she told Lorenzon and Flock that Carnevale's conduct was "racially and sexually offensive in nature."  Mitchell Cert. Exhibit M, ¶ 1.

meetings or instructional opportunities denied to Moore were unrelated to her actual job responsibilities.  It is undisputed that the white males in the Real Estate department were higher-ranking Senior Real Estate Representatives, and had different and greater responsibilities than Moore.

### *Internal Complaints of Discrimination*

In addition to her complaints regarding Carnevale, Moore was persistent in filing repeated internal complaints concerning discrimination in the Real Estate department.  On September 22, 2000, Moore wrote a letter to Eugene McGrath ("McGrath"), Con Ed's Chairman, alleging that she was facing a hostile work environment, and adding an allegation that Flock was not promptly reimbursing her for college courses taken while she was absent for health reasons.[6]  Moore refused to cooperate with the ensuing EEOA investigation.  On April 6, 2001, Moore sent another email to McGrath complaining that a February 21, 2001 assignment to clean and furnish a corporate apartment with Senior Real Estate Representative Edmund Corini ("Corini"), a white male, had constituted sex discrimination.  Moore alleges that she was ordered to perform this assignment, as well as particular tasks such as ironing that reflected gender stereotypes.  Defendants allege that Moore volunteered for the task, that Corini assisted her in all aspects of the assignment, and that she did not complain about the assignment at the time.  The ensuing EEOA investigation, with which Moore again refused to cooperate, found no discrimination.

---

[6] A week later, she filed the original complaint in this action against Con Ed, as discussed further in Section II, infra.

Starting in or about August 2001 and continuing through October 11, 2001,  Moore communicated on six separate occasions – twice a month for three months – with various Con Ed officers, including Richard Cowie, Director of Human Resources, Lilliana Gonzalez ("Gonzalez"), Director of EEOA, and McGrath, for the purpose of complaining that Morrill was discriminating and retaliating against her.  In the final communication, an email sent on October 11, she accused Morrill of lying, "terroristic tactics" and discrimination against female employees under his supervision. Fields Dec. Exhibit ZZ.  EEOA subsequently investigated and determined that Moore's complaints were unfounded.

### *Performance Reviews and Salary Treatment*

In March 1998, Moore received an annual performance review noting a variety of areas in which she needed to improve while stating she had potential to be a productive member of the department.  She subsequently received a salary increase she believed was "minimal." Fields Dec. Exhibit K, 728.  On January 8, 1999, Moore received a poor annual performance review, and was subsequently denied a salary increase.  Flock also warned her that failure to improve could result in termination.  In March of 2000, Moore received a much-improved performance review and received another "minimal" salary increase. Id.

On July 30 2001, Moore received a negative performance review, the first prepared by Morrill, and was denied a salary increase.  On February 27, 2002, Moore discovered a draft of her annual performance review, prepared by Morrill, on an office printer.   The draft summary of her performance stated that her performance was poor,

that her behavior was argumentative and erratic, and that "the department will never be able to function as an effective team under these conditions."  Mitchell Cert. Exhibit D. One of the three paragraphs in the performance summary read:

> Matricia filed a harassment and discrimination claim with EEO in the fall of 2001.  EEO investigated that claim and the claim was determined to be unfounded.  The claim caused significant morale damage to this department.

Id.  Morrill also wrote in the review's "Initiative" section that, "Her primary focus appears to be perpetuating her claims of harassment and discrimination as evidenced by the many emails she distributes to that effect." Id. This statement was accompanied by another reference to Moore's October 2001 EEOA complaint.

Moore complained to Rosemary Stewart, the Manager of Performance Management, and in response Stewart assisted Morrill in revising the performance review to omit reference to Moore's complaints.  The new report continued to rank her performance as "below an acceptable level" and Moore was again denied a salary increase.  On March 24, 2003, Moore's performance review was negative, summed up by the statement that "Although Matricia has made some improvement in her cooperation over the past year, overall her performance continues to be below an acceptable level for her position."  Grodnitzky Dec. Exhibit F.  She was once again denied a salary increase.

### Termination

On October 24, 2003, Moore received an interim performance review and Performance Improvement Notice ("PIN") warning that she would be terminated if her

performance did not improve.  Following the delivery of the PIN, Morrill and Moore met weekly to review her progress in meeting the PIN requirements.  Defendants allege Morrill worked regularly with Moore to help her meet and understand the PIN requirements.  Moore alleges Morrill sabotaged her performance in a variety of ways, and that the PIN requirements were set by Morrill to ensure her failure.  The deadline for completion of the specific improvements contained in the PIN was 30 days, but Morrill extended the deadline.  On November 23, Moore complained to EEOA that she was being set up to fail her PIN.  In January 2004, Moore asked Morrill to approve her participation in a mentoring program, and Morrill refused.  Moore filed a complaint with EEOA on January 23, 2004 alleging that this refusal was retaliatory.  Defendants assert that Human Resources guidelines reserved the program for high performers.  On January 30, 2004, Con Ed Treasurer Robert Stelben, Morrill and two Human Resources officers met to discuss Moore's performance and agreed to terminate her.

## II. Relevant Procedural History

On September 29, 2000, Moore filed the initial Complaint in this action against Con Ed, alleging violations of FMLA, § 1981, and New York State Executive Law § 296.  On October 3, 2002, Moore was granted leave to file an amended complaint. On December 11, 2002, she filed a charge against Con Ed for race and sex discrimination and retaliation with the United States Equal Employment Opportunity Commission (EEOC), and was issued a right-to-sue letter on April 15, 2003.  In the interim, on February 26, 2003, Moore filed a complaint against Morrill alleging violations of, <u>inter</u>

alia, § 1981, New York State Executive Law § 296, and New York City Administrative
Code § 8-502.

On May 27, 2003, Judge Mukasey granted Moore's unopposed application
for leave to amend her complaint, and ordered the separate cases against Con Ed and
Morrill consolidated for discovery purposes.  To facilitate mediation and settlement, the
Court repeatedly extended Moore's deadline for filing an amended complaint, with the
final order being that "[a]bsent a settlement plaintiff will serve an amended complaint by
September 19, 2003." Mitchell Cert. Exhibit KK.  The procedural history of Moore's
multiple complaints and the various amendments and consolidations is less than clear, but
subsequent procedural events are even murkier.

Moore's attorney, Stephen Mitchell ("Mitchell") asserts that he served
Defendants with an amended complaint on September 19, 2003 and filed a stamped copy
with the Clerk of the Court's office two days later.  Moore has produced an amended
complaint against Con Ed that includes Title VII and New York City claims and bears
such a stamp with a September 21, 2003 date.  Mitchell Cert. Exhibit NNN.  He further
argues that the amended complaint was discussed at a conference on September 26, 2003
and that the Defendants did not object to the amended complaint.  Mitchell asserts that
Judge Mukasey's practice in this case was to have amended complaints served in this
manner, such that they would be officially filed, if Defendant did not object.

Defendants do not directly contest any of these assertions, but maintain
that amended complaint was never officially filed.  Filing the amended complaint
required, Defendants argue, an order permitting the filing which Judge Mukasey never
issued, and that therefore even if Mitchell did deposit a stamped copy with the court, it

was never accepted for filing, and therefore never became operative.  Defendants

acknowledge receiving the amended complaint in September, and that they did not

object, but state that they "followed up and found it was never filed with the court."

Transcript of Oral Argument, October 25, 2006, at 43.

Judge Mukasey apparently issued another order on October 7, 2003,

allowing Moore to file a consolidated amended complaint against Con Ed and Morrill.[7]

On October 28, he ordered that the consolidated amended complaint be served by

October 31, 2003.  Apparently no complaint was filed at that time.  On February 3, 2004,

Judge Mukasey ordered that Moore provide Defendants with her "proposed second

amended complaint" and ordered Defendants to advise the Court as to whether they

opposed plaintiff's application for leave to file it.  Judge Mukasey granted another request

by Plaintiff to amend the complaint on June 21, 2004, but only insofar as it was the

consolidated amended complaint contemplated by the October 7, 2003 order.

In July 2004, the case was apparently reassigned to Judge Holwell, and

then quickly reassigned on August 13, 2004 to Judge Castel.  On March 21, 2005, Judge

Castel reaffirmed Judge Mukasey's June 21, 2004 order, and the current consolidated and

amended complaint was filed on March 26, 2005.  The case was reassigned to this Court

on August 1, 2005.

---

[7] Such an order is referred to in Judge Mukasey's order of June 21, 2004, but was never docketed.

**DISCUSSION**

**I. Summary Judgment Standard**

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof'." Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).    In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party."  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted).  Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).


**II.  Retaliation**

On a motion for summary judgment, employment discrimination claims brought under Title VII, 42 U.S.C. § 1981, and New York State and City statutes are analyzed under identical standards. See, e.g., Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989) (McDonnell Douglas framework applies to both § 1981 and Title VII); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir. 2000) ("identical standards apply to employment discrimination claims brought under Title VII, Title IX,

New York Executive Law § 296, and the Administrative Code of the City of New York").

Retaliation claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff must make out a prima facie case of retaliation. Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 443 (2d Cir. 1999). If the plaintiff presents such a case, the burden shifts to the defendant to present evidence of "a legitimate, nonretaliatory reason for the complained of action." Id.  If the defendant meets this burden, the plaintiff must then demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is a mere pretext for retaliation. Id.

## A. Plaintiff's Prima Facie Case

To establish a prima facie case of retaliation, Plaintiff must show: "'[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995) (alteration in original)).  The burden of proof at the prima facie stage is de minimis. Weinstock, 224 F.3d at 42.

### Plaintiff's Protected Activities

There is no question that Plaintiff has made out the first element of a prima facie case of retaliation.  A "'protected activity' refers to action taken to protest or

oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560,

566 (2d Cir.2000).   Moore has sufficiently alleged that she complained internally about

Carnevale's harassment on a number of occasions between 1997 and 2000.  She also

indisputably complained about race and sex discrimination by Morrill, beginning with the

corporate apartment furnishing assignment in 2001, escalating with the six complaints

made between August and October 2001, and persistently thereafter, including filings

with the EEOC and in this Court.  Defendants may on occasion dispute the precise

knowledge decision-makers possessed as to individual complaints, but there is no dispute

that all relevant persons were aware of the complaints in general.


### *Adverse Employment Actions*

The Supreme Court recently promulgated a new standard for determining

the existence of an adverse employment action in a retaliation claim. Burlington Northern

and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006); see also Kessler v.

Westchester County Dept. of Social Services, 461 F.3d 199, 207 (2d Cir. 2006)

(recognizing new standard).  Burlington Northern adopts a broader standard in retaliation

claims than in other employment discrimination claims, requiring only that the

employer's action  "well might have 'dissuaded a reasonable worker from making or

supporting a charge of discrimination.'" Burlington Northern, 126 S.Ct. at 2415 (quoting

Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks

omitted).

There is no question that Moore's termination by Con Ed constitutes an

adverse employment action.  In addition, Moore's performance evaluations resulting in a

denial of any salary increase in 1999, 2001, 2002 and 2003 constituted adverse

employment actions even under the pre-<u>Burlington Northern</u> standard.[8]  <u>See, e.g.</u>, <u>Lawson</u>

<u>v. Federal Reserve Bank of New York</u>, 03 Civ. 1154, 2004 WL 1497567, at *12

(S.D.N.Y. July 1, 2004); <u>Hunter v. St. Francis Hosp.</u>, 281 F.Supp.2d 534, 544 (E.D.N.Y.

2003); <u>Richetts v. Ashcroft</u>, 00 Civ. 1557, 2003 WL 1212618, at *6 (S.D.N.Y. March 17,

2003); <u>Ogbo v. New York State Dept. of Finance</u>, 99 Civ. 9387, 2001 WL 986546, at *5

(S.D.N.Y. August 28, 2001); <u>Cooper v. Morgenthau</u>, No. 99 Civ. 11946, 2001 WL

868003, at *8 (S.D.N.Y. July 31, 2001).  Indeed, Defendants explicitly conceded in

briefing this motion that Moore's salary treatment after 2000 constituted adverse

employment action, <u>Defendants' Memorandum of Law</u>, 14 ("only Plaintiff's wage

treatment and termination satisfy the third prong").[9]

Moore's allegedly "minimal" salary increases in 1998 and 2000 present a

closer question, but under the <u>Burlington Northern</u> standard the claims for these years

suffice as well.  Minimal salary increases to a complaining employee, if an intentional

reduction in the range of the salary earned by comparable employees, might well

dissuade similarly situated employees from complaining of discrimination.[10]  Moore also

argues that her exclusion from meetings and opportunities for professional development

and her assignment to set up the corporate apartment in February 2001 were adverse

employment actions.  The Court rejects this argument.  Unlike the allegations in

---

[8] These actions also constitute adverse employment actions for purposes of a differential treatment claim, where the pre-<u>Burlington Northern</u> standard continues to apply.

[9] Defendants reversed their position at oral argument and suggested that only the termination constituted an adverse employment action, but they presented no authority in support of that position.  <u>Burlington Northern</u> renders this argument untenable.

[10] A "minimal" salary increase, however, would not be sufficient to constitute an adverse employment action in the context of a differential treatment claim.  Such an action is not a "materially adverse change in the terms and conditions" of employment. <u>Weeks v. New York State (Div. of Parole)</u>, 273 F.3d 76, 85 (2d Cir. 2001).

Burlington Northern, these actions did not alter Moore's job responsibilities or prestige, or involve even a temporary deprivation of compensation. No reasonable employee would refrain from complaining of discrimination if threatened with such exclusion, and so the retaliation claims based on such exclusion are inadequate.

### *Causal Connection Between the Protected Activities and Adverse Actions*

Moore can show that her protected activity was the cause of the relevant adverse employment action either: (1) directly, through "evidence of retaliatory animus directed against the plaintiff by the defendant"; or (2) indirectly, through circumstantial evidence including that the protected activity was followed closely by the adverse action. Gordon v. New York City Bd. of Educ. 232 F.3d 111, 117 (2d Cir. 2000).

As to the 1998, 1999 and 2000 evaluations and salary treatment, Moore has not met her burden. She presents no direct evidence of retaliatory animus, and relies solely on the temporal proximity of a number of her complaints regarding Carnevale's alleged harassment to her evaluations. The only evidence Moore presents regarding the timing of those complaints is her testimony that she complained to Mele in November 1997 and to Flock in June or July of 1998. The 1998 evaluation was issued in March, and so the protected activity occurred approximately five months prior to the evaluation. In prior cases, the Second Circuit has found even three months to be too remote to support a retaliation claim.[11] See, e.g., Hollander v. American Cyanamid Co., 895 F.2d

---

[11] Defendant cites no cases finding a causal connection based on temporal proximity of more than three months, and the Court notes that where the Second Circuit has made such a finding, there were unusual aspects of the case that explained the delay. See, e.g., Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46

80, 85-86 (2d Cir. 1990) (passage of three months too long to suggest a causal relationship between complaint and failure to provide good recommendation). Similarly, the 1999 evaluation apparently occurred six to seven months after the last protected activity for which Moore presented evidence, and there is no evidence whatsoever of protected activity prior to the 2000 evaluation.

Moore has, however, produced sufficient evidence to support her claims of retaliation based on her 2001, 2002 and 2003 evaluations and salary treatment, and her 2004 termination. Morrill clearly relied on Moore's complaints of discrimination in his draft of Moore's "poor" 2002 performance evaluation.[12] Moreover, Carolene George ("George"), a former subordinate of Con Ed EEOA Director Gonzalez, testified that Gonzalez told her that Defendants were retaliating against Moore in putting her on a PIN, and strongly implied that such retaliation had been ongoing at least since the 2002 draft evaluation. See Mitchell Cert. Exhibit CCC, 89-90, 97.[13] Together, these facts constitute substantial direct evidence of retaliatory animus affecting the 2002 evaluation and the actions that followed. Additionally, a reasonable juror could easily believe that Morrill had already possessed such retaliatory animus by the time of Moore's July 30, 2001 evaluation but managed to avoid creating documentary evidence of the fact. The direct evidence alone is therefore adequate to support a prima facie case covering all retaliation claims based on Morrill's tenure as Moore's supervisor.

---

(2d Cir. 1980) (eight-month delay between EEOC complaint and retaliatory act explained by binding eight-month job assignment already given prior to notice of complaint).

[12] Defendants' argument that the draft evaluation written by Morrill is irrelevant because the final evaluation did not rely on Moore's complaints is unpersuasive. If anything, revision after Moore complained demonstrates the draft's probative value in showing a retaliatory animus.

[13] This testimony is admissible non-hearsay as an admission by Con Ed through its agent under F. R. Evid. 801(d)(2)(D). The existence of discrimination or retaliation in the workplace was clearly within the scope of Gonzalez's employment as EEOA Director.

**B. Defendants' Justifications**

Defendants argue that Moore's evaluations, salary treatment, and eventual termination were the legitimate result of her poor and declining performance during the relevant period.  This is undoubtedly a sufficient non-discriminatory justification, supported by substantial evidence.  Plaintiff's direct evidence of retaliatory animus, however, is more than sufficient to allow a reasonable juror to believe that Moore's alleged poor performance was only an excuse and that the central motive was retaliatory. Retaliation occurs when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause… even if valid objective reasons for the discharge exist." Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).  Moore's evidence raises genuine issues of material fact regarding the motive behind her treatment by Defendants after Morrill joined the Real Estate Department.

Defendants attempt to avoid this conclusion by arguing in the alternative that they were entitled to act against Moore based in whole or in part on her complaints of discrimination, given the unsupported and disruptive nature of those complaints.  They assert that it was the disruptive and abusive nature of the complaints, rather than the fact of them, that motivated Defendants' actions.  Even assuming the absence of any dispute that Moore's complaints were unsupported, disruptive, and abusive, Defendants' argument is unpersuasive in light of the direct evidence of retaliatory motive presented by Moore.  By contrast, the three cases cited by Defendants all rest on the plaintiffs' lack of evidence that the true reason for the relevant employment actions was retaliation for protected activity. See Harrison v. Administrative Review Bd. of U.S. Dept. of Labor,

16

390 F.3d 752, 758 (2d Cir. 2004) ("petitioner failed to demonstrate at trial that he was discharged for communicating safety concerns" as required for a retaliation claim under Surface Transportation Assistance Act); <u>Ashjari v. Nynex Corp.</u>, 98 Civ. 9411, 1999 WL 464977 at *2 (2d Cir. July 22, 1999) ("As Ashjari provided no evidence that this reason [<u>i.e.</u> his filing of 'multiple unsubstantiated complaints against his supervisor'] was pretextual, the court properly dismissed the retaliation claim."); <u>Estrada v. Lehman Bros., Inc.</u>, 99 Civ. 8559, 2001 WL 43605 at *5 (S.D.N.Y. January 18, 2001) ("Nor has Plaintiff submitted evidence that retaliation for his formal complaints and emails alleging that Miller favored black employees was the true reason for his termination."). Here, however, the Director of the employer's own equal employment opportunity office herself believed Defendants' actions to be retaliatory. Surely a reasonable juror could reach the same conclusion.[14]

## III. Hostile Work Environment

"A hostile work environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" <u>Torres v. Pisano</u>, 116 F.3d 625, 630-31 (2d Cir. 1997) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)). The underlying conduct must be pervasive enough that a reasonable person would find the environment hostile or abusive. <u>See id.</u> This requires that the incidents be "repeated and continuous," rather than mere "isolated acts or occasional episodes." <u>Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.</u>, 957 F.2d 59, 62 (2d Cir. 1992).

---

[14] As this is a motion for summary judgment, the Court assumes the credibility of George's testimony to that effect.

Moore alleges two types of conduct that she asserts created a hostile work environment: (1) her sexual and racial harassment by Carnevale; and (2) her general exclusion by Morrill from opportunities for professional development.  Morrill cannot be liable for the Carnevale claim because the underlying incidents occurred prior to his tenure as Director of the Real Estate department.  For Con Ed to be held liable, Moore must demonstrate that "the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Karibian v. Columbia Univ., 14 F.3d 773, 780 (2d Cir. 1994).

**A.  Sexual and Racial Harassment by Carnevale**

Moore's testimony regarding Carnevale's conduct raises triable issues of fact regarding the existence of a racially and sexually hostile work environment.  Even setting aside Carnevale's unwelcome efforts to touch Moore, which she admittedly never complained of to her supervisors, his "countless" sexual propositions and sexually and racially offensive comments, made on a weekly basis over two years, could be sufficiently pervasive as to alter the conditions of her employment.  This is true even if Moore could not identify more than a few specific incidents.  See Torres, 116 F.3d at 631 ("If a jury were to credit Torres' general allegations of constant abuse…it could reasonably find pervasive harassment, even in the absence of specific details about each incident").  Defendants, while implicitly disputing Moore's allegations regarding Carnevale, failed to produce any evidence or testimony contradicting Moore's version of the events.  In light of that failure, Moore's testimony is clearly adequate to defeat summary judgment, especially given "that the pervasiveness of harassing conduct 'is the

18

sort of issue that is often not susceptible of summary resolution.'" Id. (quoting

DiLaurenzio v. Atlantic Paratrans, Inc., 926 F.Supp. 310, 314 (E.D.N.Y. 1996)).

        Moore has also produced sufficient evidence to raise a genuine issue of

fact as to whether Con Ed knew of the harassment.  It is undisputed that Moore

complained about Carnevale being vulgar to her direct supervisor, two successive

Directors of the Real Estate department, and Con Ed's Treasurer, though it is unclear how

much detail she provided.  Moreover, Moore has presented uncontradicted testimony that

one of the Directors, Flock, actually witnessed Carnevale squeeze between Moore and

Grant and make an "oreo cookie" comment.  No disciplinary or remedial action was

taken.  The fact that some awareness of Carnevale's conduct existed at multiple

supervisory levels is sufficient to make Con Ed's knowledge of the hostile work

environment a jury issue, notwithstanding Moore's failure to utilize the established

EEOA procedure.  See Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (holding

that where the immediate supervisor and the supervisor for the entire department knew of

the hostile work environment and failed to take remedial action, the trier-of-fact could

impute the conduct to the employer).

**B. Exclusion by Morrill**

        Moore's hostile work environment claim based on Morrill's exclusion of

her from opportunities for professional development, however, is not adequately

supported.  No reasonable person would have felt that Morrill's alleged conduct created a

hostile and abusive work environment, and the sole case relied on by Moore, Feingold, is

not to the contrary.

The training and support denied to the plaintiff in <u>Feingold</u> were given to other similarly situated employees and were necessary to perform his duties. <u>Id.</u> at 151. Moore has not produced evidence that the meeting involvement, feedback, and instruction she was allegedly denied were essential to the job duties of a Real Estate Representative or that other Real Estate Representatives were given such opportunities. Instead, she relies exclusively on the opportunities allegedly provided only to the Senior Real Estate Representatives in her office.  Even more important, <u>Feingold</u> involved extensive direct evidence that racial and religious hostility was the basis for denying the plaintiff training and support.  <u>Id.</u> at 150-51. Here, Moore has presented no direct evidence that her race or sex motivated Morrill's actions.  Moore's reliance on <u>Feingold</u> is unavailing, and her hostile work environment claim based on Morrill's conduct must be dismissed.

**C. Timeliness under Title VII and the Statute of Limitations under State Law**

Defendants argue that because Carnevale undisputedly ended his employment at Con Ed more than 300 days prior to the filing of Moore's EEOC charge, her Title VII claims based on allegations relating to him are time-barred under 42 U.S.C. § 2000e-5(e)(1).  The Supreme Court has held that an employee can recover on a hostile work environment theory for acts occurring more than 300 days before a charge was filed with the EEOC if a defendant also committed an act within the 300-day period that was part of the "same actionable hostile work environment practice." <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 120 (2002).  In light of this Court's determination that none of Morrill's alleged conduct constituted a hostile work environment, however, there

was no continuing violation within the 300-day period.  Moore's Title VII claim for

hostile work environment is accordingly dismissed as time-barred.

Defendants also note that all state and city claims based on conduct by

Carnevale occurring before September 29, 1997, three years prior to the filing of Moore's

original Complaint, would be barred by the statute of limitations.  See N.Y. C.P.L.R.

§214(2) (McKinney 2006); N.Y.C. Admin. Code §8-502(d).  As the Amended Complaint

only covers harassment beginning in November 1997, however, the point is moot.[15]


**IV.  Differential Treatment**

Under the McDonnell Douglas framework, a plaintiff making a

differential treatment claim must first make out a prima facie case of discrimination by

showing that: (1) she is a member of a protected class; (2) she performed her job

satisfactorily; (3) she suffered an adverse employment action; and (4) the circumstances

give rise to an inference of discrimination.  See Weinstock, 224 F.3d at 42; Stratton v.

Department for the Aging for City of New York, 132 F.3d 869, 879 (2d Cir. 1997).

There is no dispute that Moore is a member of a protected class, satisfying the first

element of the prima facie case, and Moore's termination in 2004 and her poor

evaluations and denials of salary increases in 2001-2003 constitute adverse employment

actions.  Moore fails, however, to present evidence sufficient to demonstrate that her

performance was satisfactory or that her treatment gives rise to an inference of

discrimination.

Moore presents no evidence that her performance was actually satisfactory

during the relevant periods.  Instead, she relies exclusively on her testimony that she was

---

[15] There is no dispute that all of Plaintiff's claims under § 1981 are timely.

excluded from opportunities for training and professional development available to the Senior Real Estate Representatives in the Department.  This is insufficient because it does not provide any evidence that her performance nonetheless met a minimal standard of adequacy.  As Moore has not presented such evidence, or even argued the point except in brief and conclusory form, she cannot meet even the <u>de</u> <u>minimis</u> <u>prima</u> <u>facie</u> standard.

Assuming for the sake of argument that the lack of evidence of satisfactory performance of her position's responsibilities was not dispositive, Moore has also failed to present evidence creating an inference that the adverse employment actions were the result of racial or sexual discrimination.  "[T]here is no unbending or rigid rule about what circumstances allow an inference of discrimination," but they include "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus…, preferential treatment given to employees outside the protected class…, [or] the timing or sequence of events leading to the [adverse employment action]." <u>Chertkova v. Connecticut General Life Ins. Co.</u>, 92 F.3d 81, 91 (2d Cir.1996) (citations omitted). Here, the timing of the actions is not indicative of racial or sexual discrimination, as opposed to retaliation, and Moore has presented no direct evidence reflecting discriminatory animus or evidence of the treatment of any similarly situated employees, as opposed to her superiors within the department.  Nor does the evidence show any special circumstances suggesting discrimination.  Therefore Moore has failed to satisfy this element of the <u>prima</u> <u>facie</u> case as well.

**V.  Timeliness of All Claims Brought under Title VII**

Defendants' argue that Moore's failure to file an Amended Complaint within 90 days of receiving her right-to-sue-letter from the EEOC bars her Title VII claims, which were not asserted in the original Complaint.  While failure to bring the claims within the prescribed 90-day limit is certainly grounds for dismissal, the Supreme Court has affirmed the availability of "equitable tolling" of the statutory deadline.  See Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990); Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984).  "Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled." Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002).  The Supreme Court has allowed equitable tolling "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," see Irwin, 498 U.S. at 457-58, and both the Supreme Court and the Second Circuit have implicitly acknowledged its availability "where the court has led the plaintiff to believe that she had done all that was required of her." South v. Saab Cars USA, Inc., 28 F.3d 9, 11 (2d Cir. 1994); see also Baldwin County Welcome Ctr., 466 U.S. at 1725-26 ("This is not a case…where the court has led the plaintiff to believe that she had done everything required of her").

Moore received her right-to-sue letter on April 15, 2003, and therefore would normally have been required to file suit by July 14, 2003.  Undoubtedly, Judge Mukasey's order extending the deadline to file an amended complaint incorporating Moore's Title VII until September 19, 2003 sufficed to toll the limitations period.  It is further undisputed that an amended complaint was served on Defendants and received by

the Court by the deadline.  Moreover, Judge Mukasey's later orders regarding Moore's requests to amend her complaint, including the reference to a *second* amended complaint, seem to indicate that the Court was under the impression that an Amended Complaint had been timely filed.  The fact that at least one of Judge Mukasey's orders was not docketed also suggests that holes exist in the record.

The admittedly confused record therefore convinces that Court that the cause of the failure to file Moore's Amended Complaint in September 2003 may well have been an administrative error rather than an error on the part of Moore or her attorney.  Even were the opposite true, the failure to formally file the Amended Complaint with the Court is akin to the timely defective filings for which the Supreme Court and Second Circuit have sanctioned equitable tolling.  Moreover, it seems clear from the record that the Court implicitly led Plaintiff to believe that she had done what was required of her.  Therefore, equitable tolling of the statutory limitation is appropriate.  Defendants have suffered no prejudice, having made a strategic decision not to raise the failure to formally file the Amended Complaint with Court in order to preserve the issue for its current use in a motion for summary judgment.  In light of all the circumstances, the 90-day limit is properly tolled, and Moore's Title VII claims are not time-barred.

## VI.  Statutory Bar to the New York City Claims

At oral argument, Defendants for the first time raised the issue of Moore's failure to serve her complaint on the New York City Human Rights Commission when bringing a claim under N.Y.C. Admin. Code § 8-502.  Moore did not contest Defendants' assertion at oral argument, and has not presented any evidence that her complaint was so

filed.  While N.Y.C. Admin Code § 8-502(c) does indeed include such a service requirement, this Court has repeatedly held that failure to satisfy that requirement is not fatal to a plaintiff's claim.  <u>See</u>, <u>e.g.</u>, <u>Naftchi v. New York University</u>, 14 F.Supp.2d 473, 491 (S.D.N.Y. 1998); <u>Westphal v. Catch Ball Products Corp.</u>, 953 F.Supp. 475 (S.D.N.Y. 1997); <u>see also</u> <u>Bernstein v.1995 Associates</u>, 630 N.Y.S.2d 68, 71-72 (1st Dep't. 1995).


**CONCLUSION**

Defendants' motion is GRANTED IN PART and DENIED IN PART. The surviving claims in this matter are:

(1) The § 1981, New York State, and New York City claims against both Defendants for Plaintiff's termination and her 2001, 2002, and 2003 performance evaluations and corresponding salary increase denials; and

(2) the Title VII claims against Defendant Con Ed for retaliation based on the aforementioned adverse employment actions; and

(3) the § 1981, New York State and New York City hostile work environment claims against Defendant Con Ed based on harassment by Carnevale.

The following claims brought by Plaintiff are dismissed:

(1) All libel, defamation, and FMLA claims; and

(2) all claims for differential treatment; and

(3) all hostile work environment claims against Defendant Morrill; and

(4) the Title VII hostile work environment claims against Defendant Con Ed; and

(5) the hostile work environment claims against Defendant Con Ed based on allegations other than sexual or racial harassment by Carnevale; and

(6) The retaliation claims based on allegations other than the aforementioned

adverse employment actions.

The Clerk of the Court is directed to close out this motion.

Dated:  New York, New York
        March 20, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge